72 N.Y.2d 1014 (1988)
In the Matter of David E. Graham, Jr., Appellant,
v.
Thomas A. Coughlin, III, as Commissioner of the Department of Correctional Services, Respondent.
Court of Appeals of the State of New York.
Argued September 9, 1988.
Decided October 20, 1988.
Gerald V. Hayes and Peter L. Maroulis for appellant.
Robert Abrams, Attorney-General (John Q. Driscoll, O. Peter Sherwood and Peter H. Schiff of counsel), for respondent.
Concur: Chief Judge WACHTLER and Judges SIMONS, TITONE and BELLACOSA. Judge ALEXANDER concurs in result in a memorandum. Judge HANCOCK, JR., concurs in result in an opinion in which Judge KAYE concurs.
Order affirmed, with costs, for the reasons stated in the memorandum at the Appellate Division (135 AD2d 1014), noting that Public Officers Law § 30 (1) (e) was not amended to conform with the 1979 amendment to Judiciary Law § 90 (4) (e), this being a statutory policy choice for the Legislature.
*1016 ALEXANDER, J. (concurring).
I, too, would affirm the order of the Appellate Division, because in my view the Federal felony of which defendant was convicted would also constitute a felony under New York law. Accordingly, I concur in so much of Judge Hancock's concurrence as demonstrates that identity.
HANCOCK, JR., J. (concurring).
I agree that there should be an affirmance, but only because the Federal felony of which petitioner was convicted would also constitute a felony under New York law. I disagree, for reasons of both statutory construction and policy, with the position taken by the Appellate Division and now adopted by the majority of this court, that the term "felony" as used in Public Officers Law § 30 (1) (e) encompasses any felony in any jurisdiction. In my view, the statute does not mandate automatic termination of a civil servant where his conduct, albeit a felony in another jurisdiction, would amount to only a misdemeanor or be wholly innocent activity under our own law.
Petitioner was charged by a Federal information with one count of mail fraud as an aider and abettor, a felony (18 USC §§ 2, 1341). Following his guilty plea and conviction, petitioner was discharged from State employment as a correction officer pursuant to Public Officers Law § 30 (1) (e) providing for automatic termination upon "conviction of a felony". Petitioner instituted this article 78 proceeding, challenging his discharge on the ground that the crime for which he was convicted would only constitute a misdemeanor under New York law. Petitioner's contention is that he did not have any fraudulent intent but, instead, merely "provide[d his friend] with means or opportunity" to commit mail fraud, the equivalent of committing only criminal facilitation in the fourth degree, a class A misdemeanor (Penal Law § 115.00).
As respondent has argued throughout this litigation, however, the Federal crime to which petitioner actually pleaded guilty and was convicted amounts to insurance fraud in the fourth degree, a class E felony (Penal Law § 176.15).[1] An essential element of aiding and abetting mail fraud is a *1017 sharing in the principal's fraudulent intent (Armco Indus. Credit Corp. v SLT Warehouse Co., 782 F.2d 475, 485 [5th Cir]; see also, Nye & Nissen v United States, 336 US 613, 619; United States v Kyle, 257 F.2d 559 [2d Cir], cert denied sub nom. Gardner v United States, 358 US 927). This is identical to the mental culpability required for insurance fraud ("knowingly and with intent to defraud" [Penal Law § 176.05]) and, by contrast, considerably greater than that entailed in criminal facilitation ("believing it probable that he is rendering aid" [Penal Law § 115.00]). For this reason, I agree that petitioner's automatic termination under Public Officers Law § 30 (1) (e) was warranted[2] and, accordingly, vote to affirm.
I cannot accept the proposition, adopted by the majority, that automatic termination under the statute should be triggered by the conviction in another jurisdiction of a crime which would not amount to a felony under New York law (see also, Judiciary Law § 90 [4] [e]; and Education Law § 6509 [5] [a]; contrast with Penal Law § 400.00 [1]; and Real Property Law § 440-a). The only previous occasion this court has had to address this issue was in Matter of Keogh v Wagner (15 N.Y.2d 569). There, we affirmed, albeit without opinion, a decision of the Appellate Division construing the term "felony" to be as "conceded by all * * * restricted to crimes which are felonies under the laws of the State of New York" (20 AD2d 380, 383; see also, 1978 Opns Atty Gen 37). This construction was consistent with a long line of precedents in which this court had uniformly given a similar interpretation to other such provisions.[3] It was not until Matter of Chu (42 N.Y.2d 490) that *1018 the interpretation adhered to in our prior rulings was subject to any doubt.
In Chu, applying the same provision of the Judiciary Law previously construed in Matter of Donegan (282 N.Y. 285; see, n 3, supra), we upheld the disbarment of an attorney on the ground that he had been convicted of a Federal felony. The majority of our court concluded that there was little reason to distinguish between Federal and New York felonies for the purpose of professional discipline. Significantly, the majority was quick to add that the underlying crime in the case was committed in this State and that "there is a New York State felony of substantially the same elements" (42 NY2d, at 494, supra). Indeed, three members of our court expressly relied on this latter rationale as the sole basis for their concurrence (see, 42 NY2d, at 495, supra [Wachtler, J., concurring]). Subsequently, however, in Matter of Thies (45 N.Y.2d 865), a majority of this court, over the dissent of the three Judges who had concurred in Chu, abandoned the rule in Donegan and held that the conviction of a Federal felony is always a "felony" under the disbarment provision of the Judiciary Law  whether or not there is an analogous crime under New York law.
The Legislature immediately overruled Chu and Thies and restored the Judiciary Law to the construction given it in Donegan (L 1979, ch 674).[4] In an amendment to Judiciary Law § 90 (4), the term "felony" was expressly defined as an offense classified as a felony under New York law or one so classified *1019 under the laws of another jurisdiction if it would also constitute a felony in this State (see, para [e] of § 90 [4]).
Ironically, in the present case, the majority of this court, agreeing with the Appellate Division, relies on that corrective legislation to support a contrary reading of the Public Officers Law. Because "the Legislature has not similarly amended the Public Officers Law", the court below concluded, "there is no reason to read such a limit[ed definition of `felony'] into Public Officers Law § 30 (1) (e)." (135 AD2d, at 1015.) But, of course, the Legislature had no reason to amend the Public Officers Law. That statute had never been judicially construed  or misconstrued, in the Legislature's view  in the way the Judiciary Law had been. Indeed, as previously discussed, this court had always, until Chu and Thies, interpreted the unqualified term "felony" in various statutes exactly as the Legislature defined that term in the post-Chu and Thies amendment.
Legislative clarification of a statutory term, for the specific purpose of overruling a recent judicial interpretation, is a forceful indication that, in the Legislature's view, the court misread its original intent (see, McKinney's Laws of NY, Book 1, Statutes § 193, at 359; 82 CJS, Statutes, § 384, at 899-900). Additionally, such legislative action, like the amendment to Judiciary Law § 90 (4), cannot logically be deemed any indication that the long-established interpretations of similar statutory provisions, in complete agreement with the recent amendment, are somehow erroneous and ought now to be changed (see, McKinney's Statutes § 191, at 353; 82 CJS, Statutes, § 384, at 898). Hence, contrary to the position urged by respondent, and now adopted by the majority of this court, basic principles of statutory construction seem, in my view, to compel the conclusion that the unqualified term "felony", as used in Public Officers Law § 30 (1) (e), should be read consistent with both our long line of precedents and the legislative overruling of Chu and Thies  the sole exceptions to that long line.
There are also strong policy reasons for adhering to that statutory construction. The Legislature has mandated the automatic discharge of convicted officeholders to assure the public that those employed in government service are "individuals of moral integrity in whom they may, without second thought, place their confidence and trust" (Matter of Toro v Malcolm, 44 N.Y.2d 146, 152). Public Officers Law § 30 (1) (e) strikes a balance, however, between the public's interests and that of its officers: the statute's drastic remedy is imposed only where the offense committed by a public officer is sufficiently *1020 egregious to be classified a "felony". Hence, it seems to me quite clear that the operation of this remedy adopted by this State's Legislature, to ensure the integrity of this State's public officers, should only be triggered by crimes which this State's Legislature has unambiguously chosen to consider as felonious conduct (see, Matter of Thies, supra, at 867 [Wachtler, Fuchsberg and Cooke, JJ., dissenting]; Matter of Donegan, supra, at 290-291; People ex rel. Atkins v Jennings, 248 N.Y. 46, 52).
While the term "felony" is uniformly employed to denominate those offenses which a given jurisdiction considers serious, there is, of course, no absolute uniformity among jurisdictions as to which offenses they so consider. The same conduct may be classified a felony in one jurisdiction and yet a misdemeanor or entirely innocent in another. As we have previously noted, this classification of crimes simply "represents the view which the given jurisdiction takes of the gravity of the offense" (Matter of Donegan, supra, at 290 [emphasis in original]). Our own Legislature may well view as merely venial, acts which other jurisdictions deem abhorrent. Moreover, New York constitutional or community standards  e.g., our State notions of free expression, religious liberty or privacy  may even render certain conduct entirely lawful which another State would treat as criminal (see, Matter of Chu, supra, at 495 [Wachtler, J., concurring]; Matter of Donegan, supra, at 289-290).
It makes little sense, therefore, to incorporate wholesale into Public Officers Law § 30 (1) (e) every felony of other jurisdictions. In the absence of clear legislative expression to do just that, the employment of a public officer in this State ought not to be subject to automatic termination for a conviction by another jurisdiction of a "felony" which, in the view of our own Legislature, is not so flagrant as to deserve that appellation. The proper construction of the unqualified term "felony" in Public Officers Law § 30 (1) (e) is that which had always been given by this court in its interpretation of analogous provisions (see, Matter of Donegan, supra; People ex rel. Atkins v Jennings, supra).
Clearly, if the majority agreed with my interpretation of Public Officers Law § 30 (1) (e), no amendment would be necessary. The majority has rejected this view, however, and accepted what I respectfully submit is the erroneous rationale of the Appellate Division. Legislative action is now called for *1021 to correct what, under the present interpretation, is an unfair statute.
Order affirmed, etc.
NOTES
[1] At the time of petitioner's Federal conviction, section 176.15 was denominated insurance fraud in the second degree; it was changed to the fourth degree by a subsequent amendment (see, L 1986, ch 515). It was then, as now, a class E felony.
[2] Insurance fraud in the fourth degree (Penal Law § 176.15), a class E felony, includes the additional element that whatever was wrongfully taken have a value "in excess of" $1,000. In this case, it is undisputed that the sum of money fraudulently obtained from the insurance company exceeded $6,000.
[3] In Sims v Sims (75 N.Y. 466) we held that a statute, providing that "[n]o person sentenced upon conviction for a felony, shall be competent to testify" (Rev Stat of NY, part IV, ch 1, tit 7, § 23) pertained only to felonies under New York law and, therefore, that the out-of-State conviction in question did not disqualify the witness (id., at 469-470; see also, National Trust Co. v Gleason, 77 N.Y. 400, 410 [same]). In People v Gutterson (244 N.Y. 243) we held that a predicate "crime", for the purpose of an enhanced sentencing statute for repeat offenders (former Penal Law § 2189), must be a crime "punishable under the laws of this State", unless the Legislature unambiguously intended otherwise (244 NY, at 250, supra), and, therefore, that the Federal conviction involved could not be counted. In People ex rel. Atkins v Jennings (248 N.Y. 46) we restricted the condition placed on a commutation of sentence order  i.e., that the prisoner shall not be "convicted of any felony" after release  to offenses which would be a felony in New York. "If the [out-of-State] offense for which relator was convicted would be cognizable by our laws as a misdemeanor or not at all," we said, "it cannot be included in the standard of crime that the Governor had in mind" (248 NY, at 52, supra). Likewise, in Matter of Cohen (278 N.Y. 584, affg 254 App Div 571) we affirmed a decision of the Appellate Division construing the term "felony", as used in Surrogate's Court Act § 94 (presently SCPA 707 [1] [d]) to disqualify an executor, as not applying to a person convicted of a felony in another jurisdiction. Finally, in Matter of Donegan (282 N.Y. 285) we held that "convict[ion] of a felony", as employed in Judiciary Law former § 88 (presently § 90 [4]) providing for the automatic disbarment of an attorney, did not include conviction of a Federal felony which would only constitute a misdemeanor under New York law.
[4] There can be no question that the Legislature's purpose was to undo what it believed to be a misinterpretation of the statute (see, Bill Jacket, Assembly 6252-A, especially Governor's Approval Mem [in 1979 McKinney's Session Laws of NY, at 1822], Attorney-General's Mem for Governor, Sponsor's Mem of Arthur J. Cooperman, and Mem of Office of Court Administration).