OPINION OF THE COURT
Titone, J.
The People appeal from an order of the Appellate Division which reversed a judgment entered on a jury verdict finding defendant guilty of bribe receiving by a witness (Penal Law § 215.05). The issue before us is whether an unlawful agreement to alter one’s testimony or avoid appearing at an action or proceeding may fairly be inferred from a "release” agreement in which one party agrees to "drop” criminal and civil charges in exchange for money and other valuable consideration. We agree with the Appellate Division that such a purported "release” is, without more, legally insufficient to establish the elements of the crime.
This appeal revolves around a feud between the Harper and Johnson families. The imbroglio began during the spring of 1981 when defendant, Montey Harper, became romantically *315 involved with Mabel Betty Gladden, who was at that time married to James Johnson. Although. Gladden jilted Harper near the end of 1981, during the next few years Harper persistently pursued the relationship by following her around, apparently hoping that she would change her mind and resume the affair. This behavior infuriated Gladden’s children, especially James Johnson, Jr., also known as Rick James, and his brother Carmen Johnson. During the late evening of June 1, 1984, Harper was assaulted at the 2001 Club in Amherst, New York. Harper alleged that Rick James and Carmen Johnson were his assailants. On June 4, Harper sought legal advice in drafting a criminal misdemeanor complaint against Rick James and Carmen Johnson, and exploring the possibility of instituting a civil action. On June 5, Harper filed assault charges in the Amherst Town Court against Rick James and Carmen Johnson.
A few days later, Harper approached Betty Gladden, informed her about the assault and threatened to bring a civil suit and pursue the criminal charges, unless she paid Harper $10,000. Gladden acceded to Harper’s demands. Prior to giving Harper any money, however, Gladden had Harper execute a general release agreement. This agreement, drawn up on law firm stationery, and signed by Harper and Gladden in the presence of a notary, provided that:
"I, Montey Harper, promise to drop charges against James A. Johnson, Jr. also known as Rick James for a cash reimbursement in the sum of $5000.00 (five thousand and no/100 dollars).
"This sum represents my reimbursement for medical expenses that concurred [sic] due to a scuffle at the 2001 Night Club in Amherst, New York on June 1, 1984.
"Upon receipt of the $5000.00, I promise not harass or molest Mr. James, either verbally or in any other way.
"In return, I would like him to also not harass or harm me either verbally or in any other way.
"I, also promise to drop all Criminal or Civil Suits against Mr. James also Carmen Sims.”
The agreement further provided a time schedule by which an additional $5,000 would be paid to Harper.
After the initial $5,000 was delivered to Harper, Gladden drove Harper directly to the Amherst Town Court so that Harper could perform his end of the bargain by having the *316 criminal charges dismissed. Harper met with Assistant District Attorney Joel Kurtzhalts, and informed him that he wanted to have the charges dismissed since he had worked out "some restitution.” Since Kurtzhalts had not been assigned to the case and did not have access to the case file, he refused to dismiss the charges. Nevertheless, the charges against Rick James were dismissed on October 1, 1984, without the assistance of Harper, due to facial insufficiency.
On October 3, 1984, Harper retained a new attorney who refiléd the assault charges in criminal court because Gladden had failed to make some of the scheduled payments, and James was purportedly violating the nonharassment clause of the release. At this time, Harper informed Assistant District Attorney Graff that he no longer wanted to drop the charges against James, since he had not received ail of the money that he was supposed to have received under the release agreement. Thereafter, Harper proceeded to make himself available to the prosecution and attended each court appearance made by James. Ultimately, the assault charges were again dismissed on March 19, 1985, upon the court’s own motion, because of its view that the matter was better handled in alternate dispute resolution or in a civil action.
Meanwhile, Betty Gladden, having paid a total of $6,400, became financially unable to fulfill the remainder of her side of the bargain. Concerned that Harper would continue to harass her family, Gladden spoke with an attorney, who brought this entire matter to the attention of the District Attorney.
Harper was charged with bribe receiving by a witness in contravention of Penal Law § 215.05, and, after a jury trial, was found guilty as charged. On appeal, the Appellate Division reversed Harper’s conviction and dismissed the indictment, concluding the evidence presented was legally insufficient since "the record contains no evidence that defendant would alter his testimony if the criminal prosecution against the son were continued or that defendant sought to absent himself or otherwise avoid appearing as required by the People.” (145 AD2d 933.)
As a threshold matter, in reviewing legal sufficiency we are required to view the evidence in the light most favorable to the prosecution and decide whether a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt (People v Contes, 60 NY2d 620, 621; Jackson *317 v Virginia, 443 US 307, 319). Applying this standard to the evidence presented at trial, the Appellate Division correctly concluded that the jury verdict was not supported by sufficient evidence to establish that defendant committed the crime.
Penal Law § 215.05 provides that: "A witness * * * is guilty of bribe receiving by a witness when he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that (a) his testimony will be influenced, or (b) he will absent himself from, or otherwise avoid or seek to avoid appearing or testifying at, such action or proceeding.”
The gist of the crime is not the payment of money, but rather the "agreement or understanding” under which a witness accepts or agrees to accept a benefit (see, People v Arcadi, 79 AD2d 845, 846, affd 54 NY2d 981; see also, Penal Law § 10.00 [17]). Consequently, all that is required for the completed crime is that a witness solicit, accept or agree to accept a benefit in exchange for a promise either that his testimony will be affected or that he will absent himself from or otherwise avoid appearing at the action or proceeding. There is no requirement that the benefit actually be conferred, that the testimony actually be influenced, or that the witness actually absent himself (see, People v Shaffer, 130 AD2d 431, 432-433).
Our inquiry in this case focuses upon the meaning of the word "drop” as that term appears in the general release agreement executed by defendant and was used by him in his conversations with A.D.A.’s Kurtzhalts and Graff. Indeed, defendant’s signed agreement to "drop” civil and criminal charges in exchange for the payment of money constitutes the heart of the People’s case.
The People argue that although defendant’s signed promise to "drop the charges” does not explicitly state that he would avoid testifying or absent himself from the criminal proceedings, the expectation that he would not appear is implicit in the agreement. Further, the People maintain, the phrase "drop the charges” can be interpreted as a promise to attempt in some manner to halt the criminal proceedings or hinder the prosecution. In the People’s view, the solicitation or acceptance of a benefit in exchange for a refusal to cooperate with the prosecutor or an attempt to have a criminal complaint dismissed is a violation of Penal Law § 215.05. Under the circumstances of this case, the People’s arguments cannot be sustained.
*318 As common sense and experience suggest, agreeing to "drop” charges is certainly not the same as agreeing to alter testimony or absent oneself entirely from a proceeding. Consequently, evidence that someone has agreed to do the former cannot alone be used as a basis to infer the existence of an agreement to do the latter. To the contrary, an agreement to "drop” criminal charges says nothing about the promisor’s intention to appear and testify truthfully in the event that the prosecutor decides to proceed despite the promisor’s wishes to the contrary. At worst, it suggests a fundamental misunderstanding by one or both parties of the power that private citizen-complainants have over the conduct of criminal proceedings.
Thus, the decision to drop charges cannot provide a sufficient basis from which a rational jury could infer that defendant had entered into the kind of agreement prohibited by Penal Law § 215.05. Since the record is devoid of any additional evidence establishing such an agreement, the jury verdict could only have been based upon sheer speculation that defendant, in addition to agreeing to drop the criminal and civil charges, also agreed to either perjure or absent himself if the assault case had gone to trial. This is especially so where, as here, the terms of the agreement itself reveal a far less sinister purpose.
Finally, the People’s argument, that the statute should be construed to encompass agreements to hinder a prosecution or attempt improperly to remove a case from the criminal justice system, would, if accepted, violate the general principle that penal statutes are to be interpreted according to the fair import of their terms so that penal responsibility is not extended beyond the fair scope of the statutory mandate (see, People v Ditta, 52 NY2d 657; People v Sansanese, 17 NY2d 302, 306; Penal Law § 5.00). While the People correctly point out that it is improper to use the threat of criminal prosecution as a means of extracting money in a civil suit (see, e.g., Penal Law § 155.05 [2] [e] [iv]; Code of Professional Responsibility DR 7-105, EC 7-21), and that the determination as to whether and how to prosecute a criminal case belongs to the District Attorney and not the complainant (see, Matter of Schumer v Holtzman, 60 NY2d 46, 52; People v Zimmer, 51 NY2d 390, 394), the actions undertaken by defendant Harper do not constitute the crime of bribe receiving by a witness within the meaning of Penal Law § 215.05.
*319 For the foregoing reasons, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
Order affirmed.