In the Matter of CHARLES O. SHARKEY, Appellant, v
POLICE DEPARTMENT OF THE TOWN OF SOUTHAMPTON et al.,
Respondents.

The petitioner Charles O. Sharkey, a police officer employed
by the Town of Southampton Police Department, was involved
in an automobile accident, while off-duty, on August 16, 1987.
The instant record reveals nothing about the accident, other
than the fact that one person was killed and another was
seriously injured. In December 1987 he was indicted and
charged with two counts of driving while intoxicated, vehicu-
lar assault in the second degree, vehicular manslaughter in
the second degree, and criminally negligent homicide. Pursu-
ant to the collective bargaining agreement between the Pa-
trolmens' Benevolent Association, the union representing the
petitioner, and the Town of Southampton, the Town de-
manded arbitration to determine whether the petitioner could
be summarily discharged from his position. Before that issue
was decided, the petitioner pleaded guilty to one misdemeanor

count of driving while intoxicated in full satisfaction of the indictment. Based upon this guilty plea, the Town summarily terminated the petitioner's employment pursuant to Public Officers Law § 30 (1) (e). The petitioner challenged the foregoing determination in the instant CPLR article 78 proceeding. The court upheld the Town's determination and dismissed the proceeding. We reverse.

Public Officers Law § 30 (1) (e) provides that

"[e]very office shall be [vacated] upon the * * *

"conviction of a felony, or a crime involving a violation of [an officer's] oath of office". This vacatur is automatic and there is no need for a hearing (*Matter of Briggins v McGuire*, 67 NY2d 965, *cert denied* 479 US 930; *Matter of Toro v Malcolm*, 44 NY2d 146, *cert denied* 439 US 837; *Lemieux v City of Niagara Falls*, 138 AD2d 945; *Matter of Graham v Coughlin*, 135 AD2d 1014, *affd* 72 NY2d 1014; *Matter of Pesale v Beekman*, 81 AD2d 590, *affd* 54 NY2d 707; *Matter of Hodgson v McGuire*, 75 AD2d 763; *Sroka v Municipal Civ. Serv. Commn.*, 57 AD2d 1064). When a police officer is convicted of a felony, automatic vacatur of his or her office is mandated (*see, Matter of Toro v Malcolm, supra; Matter of Graham v Coughlin, supra; Matter of Ring v Rodriguez*, 141 Misc 2d 164; *Matter of Pauley v Noeppel*, 1 Misc 2d 928). However, when the crime committed is not a felony, it must be one which violates the officer's oath of office in order for the offending officer to be subject to summary termination.

"Case law generally provides that if the crime relates to the duties of the office, the crime involves a violation of the oath of office" (*County of Broome v Conte*, 120 Misc 2d 1050, 1055). "In making such a determination, the court must consider the circumstances surrounding the conviction as well as 'the public's right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust' " (*County of Broome v Conte, supra*, at 1055; *see, Matter of Toro v Malcolm, supra*, at 152; *Matter of Graham v Coughlin, supra*, at 1016; *Matter of Ring v Rodriguez, supra*, at 166).

We decline to hold, as a matter of law, that an off-duty police officer's involvement in an automobile accident, even while intoxicated, necessarily establishes that he or she is engaged in conduct so intimately related to official duties as to constitute a *per se* violation of his or her oath of office. The record, in the instant case, neither discloses the nature of this officer's duties nor explains the circumstances surrounding the

accident. The Safety Hearing Bureau of the New York State Department of Motor Vehicles determined, after a hearing, that "this accident could not have been avoided by the [petitioner]", and that there was "not sufficient evidence to take any further action against [his] license".

Thus, there is a substantial question regarding whether the petitioner's intoxication was the proximate cause of the accident which resulted in the pedestrian's death. In the event that the petitioner's intoxication played no part in contributing to the accident, it would be unjust to expose him to a harsher penalty based upon tragic consequences which may have been entirely unrelated to his misconduct. Inasmuch as the issue of liability remains unresolved, the manner in which the Town summarily terminated the petitioner's employment violated his due process rights.

Moreover, the fact that a police officer has been convicted of a misdemeanor does not necessarily connote that he has violated his oath of office within the meaning of Public Officers Law § 30 (1) (e). Significantly, the Legislature provided for summary termination of employment, not for all convictions but only for felony and oath violating convictions. The circumstances surrounding the conviction clearly constitute an important consideration (see, County of Broome v Conte, supra). Resort to the record is necessary in order to ascertain whether the officer violated his oath of office in a manner warranting summary vacatur. Inasmuch as the record in the instant case is inadequate for that purpose, a hearing is necessary (see, McKinney's Uncons Laws of NY § 891 [Removal of Certain Policemen; L 1940, ch 834]; Civil Service Law § 75; Town Law § 155). Accordingly, the judgment is reversed, the determination is annulled, and the petition is granted.

We note that upon his reinstatement, the petitioner is entitled to back pay from the date of his wrongful termination until the date of his reinstatement (see, Civil Service Law § 77; Matter of Briggs v Scoralick, 147 AD2d 694; Matter of Yeampierre v Gutman, 52 AD2d 608) together with interest, to be calculated from the date of each paycheck to which the petitioner was entitled within that period of time (see, CPLR 5001 [b]; Matter of Kohler v Board of Educ., 142 AD2d 676). Kunzeman, O'Brien and Ritter, JJ., concur.

Miller, J. dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Thompson, J. P., concurs. I must respectfully dissent from the majority's conclusion that the petitioner has not violated his oath of office as I view his conduct as being far more egregious.

Concededly, the record in this case does not disclose the circumstances surrounding the automobile accident in which the petitioner caused the death of one person and the serious injury of another. Furthermore, I, too, concur that it would be unfair to subject the petitioner to a more severe sanction based upon the fact that a person was killed as a result of the automobile accident when this consequence may have been entirely unrelated to his intoxication. Nevertheless, in my view, the very fact that an off-duty police officer, a public officer *(see, Canteline v McClellan,* 282 NY 166, 170), charged with enforcing the laws of this State, violates the prohibition against driving while intoxicated, shows such a serious lapse in judgment that this conduct, in and of itself, violates his oath of office.

Certainly, I am aware that the Legislature has not provided for the summary vacatur of a police officer's office based upon just any misdemeanor conviction, but only upon those which violate an officer's oath of office. But to determine whether or not the officer's oath is violated by criminal conduct classified as a misdemeanor, it is necessary to first consider the oath taken upon employment: "I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and I will faithfully discharge the duties of the office of [police officer], according to the best of my ability" (NY Const, art XIII, § 1). Implicit in this oath is a vow to faithfully uphold the laws of this State.

An examination of the reported decisions construing Public Officers Law § 30 (1) (e) reveals that a driving while intoxicated conviction (hereinafter DWI conviction) has never before served as a predicate for summary termination of employment, or at least no such determination has been challenged in the courts. Nevertheless, courts have held that public officers have violated their oaths of office by making perjurious statements in support of a search warrant application *(Lemieux v City of Niagara Falls,* 138 AD2d 945), by accepting a bribe to influence the administration of official duties *(Matter of Hodgson v McGuire,* 75 AD2d 763), by conspiring to commit bribery and grand larceny *(Sroka v Municipal Civ. Serv. Commn.,* 57 AD2d 1064), or by accepting an unlawful gratuity *(Matter of Pesale v Beekman,* 81 AD2d 590, *affd* 54 NY2d 707). While these misdemeanor convictions are clearly related to the officers' offices and hence, are violative of their oaths *(see, De Paulo v City of Albany,* 49 NY2d 994), it is apparent to me that a misdemeanor DWI conviction exhibits such a glaring dearth of integrity and judgment as to be more

than equivalent to a perjury or bribe-receiving conviction and hence similarly violative of an officer's oath.

It is true, as the majority notes, that the record does not disclose the nature of the petitioner's duties. We know not whether he was "assigned to a desk" far removed from active police work or on the front lines of the war on crime. Regardless, a police officer is sworn to uphold the law. Even if his intoxication did not contribute to the tragic consequences of this fatal accident, his very presence behind the wheel of a car while intoxicated created a grave risk of harm to himself and all others around him; a risk which, according to the National Highway Traffic Safety Administration resulted in 22,000 fatalities nationwide in 1990, in alcohol related automobile accidents *(see, New MADD chapter raises awareness of drunken driving peril,* Reporter Dispatch, Westchester County, July 29, 1991, at 3, col 1).

Moreover, while technically "off-duty", in a sense, a police officer is on duty 24-hours a day. Off-duty police officers carry revolvers and are expected to and do respond to emergencies occurring in their presence whether on or off-duty. This ongoing responsibility to the citizenry warrants holding a police officer to a higher standard than that of an ordinary citizen, so that even while off-duty, the violation of a law which could and did cause serious harm to innocent parties, constitutes a violation of the officer's oath.

The majority directs that a hearing should be held to determine the circumstances surrounding the petitioner's plea. In my mind there are no circumstances so exigent or mitigating to justify drunk driving by one whose very oath of office requires him to uphold the law.

The majority further recognizes that its determination includes an assessment of whether the petitioner's conduct violated " 'the public's right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust' " *(County of Broome v Conte,* 120 Misc 2d 1050, 1055, *affd* 101 AD2d 905, quoting *Matter of Toro v Malcolm,* 44 NY2d 146, 152, *cert denied* 439 US 837). Yet, the majority does not explain its failure to apply that high standard to this case. The public, entitled to rely upon protection by the police from criminals, including drunken drivers, cannot be expected to have unwaivering "confidence and trust" in a person sworn to enforce the laws of this State, when his or her own personal conduct constitutes a serious danger to society. While a police officer need not be a saint, neither should he or she be a messenger

of death. The petitioner's offense, in my view, is not only grossly inconsistent with his duties as police officer regardless of the nature of his day to day assignments, but goes to the very heart of the obligation he assumed when he took his oath of office to promote the safety of the public. Given the seriousness of this offense, it is my conclusion that the petitioner's misdemeanor driving while intoxicated plea violated his oath of office, and thus warranted the summary vacatur of his office.