OPINION OF THE COURT
Albert Tomei, J.
It is alleged that defendant Latanya Gray, a New York City *15 police officer, acting in concert with codefendants Marion Kennedy and Andrew Johnson, solicited and received the sum of $3,000 in exchange for the promise of rescinding an assault report made by Gray, which led to the arrest of the complainant, Daniel Leon. The defendants stand charged with coercion in the first degree, grand larceny in the second degree, bribe receiving in the third degree, criminal solicitation in the fourth degree, and official misconduct (two counts).[1]
In an affirmation and memorandum of law, defendant Gray claims that the indictment must be dismissed on the ground that it is not legally sufficient. Specifically, she claims that even if she agreed to drop the charge against the complainant in exchange for money — an allegation that she denies — because all of the charges pertain to conduct "as a public servant” or "related to” or "in the nature of’ her official office, her conduct of agreeing to drop a complaint she made as a civilian does not render her criminally liable for the crimes with which she is charged. Her codefendants join in the motion.
In response, the People claim that the mere fact that the defendant may not have been in uniform, working a tour of duty, does not mean that she was "off-duty”, or that her actions did not constitute the type of abuse of official power which the contested statutes were designed to punish.
FACTUAL BACKGROUND
The following synopsis of pertinent facts is based upon the evidence before the Grand Jury:
The Occurrence
On September 6, 1996, the defendant, Latanya Gray, a New York City police officer, had a dispute with the complainant, Daniel Leon, over the servicing of Gray’s beeper. Gray and Leon had a verbal argument inside Leon’s store. Leon told Gray to leave. According to Leon, he did not strike or threaten Gray. Nevertheless, Gray summoned the police to the store.[2] When uniformed officers arrived at the scene, Gray told them *16 that she was a police officer and she wanted the officers to arrest Leon; the officers complied. [3] At the time of the incident, Gray was not in uniform and was not working a tour of duty.
On September 8, 1996, after Leon was released from jail, he received an electronic page requesting him to call defendant Andrew Johnson, Gray’s cousin. During the ensuing telephone conversation, Johnson told Leon that Gray would be willing to "drop” the assault charge if Leon paid her $5,000. After some negotiation, Johnson and Leon agreed upon $3,000 as the price for dropping the charge. Later that day, Leon contacted detectives with the Internal Affairs Bureau of the New York City Police Department and enlisted their aid in the matter.
On September 9, 1996, after speaking with Johnson, Gray, and defendant Marion Kennedy about the payment of the money and the promise to drop the charge, Leon met with Kennedy and Gray. Gray placed a telephone call during which she allegedly spoke with an unidentified person about dropping the charges. Leon gave $3,000 to Kennedy; Gray was standing nearby during the exchange. This transaction was monitored by agents of the Internal Affairs Bureau. Gray and Kennedy were arrested at the scene, immediately following the exchange.
The Charges
Coercion in the First Degree: Penal Law § 135.65 (2) (a)
The first count of the indictment alleges that the defendants, each acting in concert with one another: "compelled or induced a person to engage in conduct which the latter has a legal right to abstain from engaging in, or to abstain from engaging in conduct which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the actor or another will accuse some person of a crime or cause criminal charges to be instituted against him, or use or abuse his position as a public servant by performing some *17 act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely, and thereby compelling or inducing the victim to commit or attempt to commit a felony, namely, inducing and compelling Daniel Leon to pay the defendants a quantity of United States currency in exchange for defendant, Latanya Gray, a police officer, to withdraw criminal charges she caused to be brought against Daniel Leon, and thereby inducing and compelling Daniel Leon to commit the crime of bribery in the third degree, a class D felony.”
Grand Larceny in the Second Degree: Penal Law § 155.40 (2) (c)
The second count of the indictment alleges that the defendants, each acting in concert with one another: "stole certain property which was obtained by extortion committed by instilling in the victim, Daniel Leon, a fear that the actor or another person would use or abuse his position as a public servant by engaging in conduct within or related to his position as a public servant by engaging in conduct within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely, namely, the defendants acting in concert demanding a quantity of United States currency to have defendant Latanya Gray, a police officer, withdraw criminal charges she had commenced against Daniel Leon.”
Bribe Receiving in the Third Degree: Penal Law § 200.10
The third count of the indictment alleges that the defendants, each acting in concert with one another: "did solicit, accept, or agree to accept any benefit from any person upon an agreement or understanding that his vote, opinion, judgment, action, decision, or exercise of discretion as a public servant would be thereby influenced, namely, defendant Latanya Gray, a police officer, while acting in concert with defendants Marion Kennedy and Andrew Johnson did solicit and accept a quantity of United States currency from Daniel Leon to withdraw criminal charges defendant Latanya Gray had commenced against Daniel Leon.”
Criminal Solicitation in the Fourth Degree: Penal Law § 100.05 (1)
The fourth count of the indictment alleges that the defendants, each acting in concert with one another: "with intent *18 that another person engage in conduct constituting a felony, solicited, requested, commanded, importuned, or otherwise attempted to cause such other person to engage in such conduct, namely, soliciting and commanding Daniel Leon to pay the defendants a quantity of United States currency in exchange for defendant Latanya Gray, a police officer, to withdraw criminal charges she caused to be brought against Daniel Leon, and thereby soliciting and commanding Daniel Leon to commit the crime of bribery in the third degree, a class D felony.”
Official Misconduct: Penal Law § 195.00 (1), (2)
The fifth count of the indictment alleges that the defendant Latanya Gray: "being a public servant, and with intent to obtain a benefit or deprive another person of a benefit, committed an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act, is unauthorized, namely, accepting a quantity of United States currency to withdraw criminal charges which she caused to be initiated against Daniel Leon.”
The sixth count of the indictment alleges that the defendant Latanya Gray: "being a public servant, and with intent to obtain a benefit or deprive another person of a benefit, knowingly refrained from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office, namely, refusing to withdraw criminal charges pending against Daniel Leon which defendant caused to be imposed against him unless a quantity of United States currency was paid.”
CONCLUSIONS OF LAW
The indictment charges the abuse of official power under four different theories: (1) "use or abuse [of] her position as a public servant by performing some act within or related to her official duties, or by failing or refusing to perform an official duty” (counts one and two, charging coercion in the first degree and grand larceny in the second degree, respectively); (2) "exercise of discretion as a public servant” (counts three and four, charging bribe receiving in the third degree and criminal solicitation in the fourth degree); (3) committing "an act relating to her office but constituting an unauthorized exercise of her official functions” (count five, charging official misconduct); (4) knowingly "refrain[ing] from performing a duty which is imposed upon her by law or is clearly inherent in the nature of her office” (count six, charging official misconduct).
The gravamen of all of these charges, however, is the same: the abuse of power by a public servant in performing (or fail *19 ing to perform) a function relating to his or her office. The defendant urges the court to dismiss the indictment because, she claims, the defendant’s act of making a complaint as a private citizen, then allegedly offering to withdraw that complaint in exchange for just compensation for the injury she suffered, does not constitute any of the crimes charged in the indictment. (See, People v Harper, 75 NY2d 313 [1990] [charge of bribe receiving by a witness was not sustained by proof that defendant agreed to "drop” charges, where there was no evidence that defendant agreed to perjure himself or absent himself from proceedings].)
However, in determining the legal sufficiency of an indictment, the court must view the evidence in the light most favorable to the People. (See, People v Warner-Lambert Co., 51 NY2d 295, 305 [1980].) Viewed in that light, the evidence portrays the defendant not as a victim seeking fair recompense, but as a manipulator and conniver who abused her authority as a police officer to coerce the complainant to pay her money because she was dissatisfied with his services. Mindful that New York’s Penal Law is not to be construed strictly, but is to be construed "according to the fair import of [its] terms to promote justice and effect the objects of the law” (see, Penal Law § 5.00), the court rejects an interpretation of the contested statutes that would permit a police officer, acting under the cloak of color-able authority, to call upon her brother officers to invoke the mechanism of arrest for the purpose of extorting cash payment from a civilian in exchange for rescinding a false complaint.
The charges contained in the indictment pertain to public servants who abuse their office by engaging in acts relating to their official function. A public servant is "any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or * * * any person exercising the functions of any such public officer or employee”, as well as "a person who has been elected or designated to become a public servant.” (Penal Law § 10.00 [15].) There can be no doubt that the defendant, a New York City police officer, is a public servant.
Official action means such as properly belongs to the office even if. the right to perform it did not exist under the circumstances. (See, People v Chapman, 13 NY2d 97, 101 [1963] [officer who arrested and booked defendant did not have actual authority to release him, but had colorable authority because he could have altered testimony forming basis of arrest].) " 'It is sufficient if the defendant assumed, colore officii, to perform *20 a function belonging to his office even if the right to perform it did not exist in the particular case’ (Supra, at 101.) Therefore, the specific question before the court is: viewing the evidence in the light most favorable to the People, did the defendant act with actual or at least colorable authority? In this case of apparent first impression, the court answers this question in the affirmative.
There can be no doubt that if the defendant had arrested the complainant herself, then solicited a bribe for dropping the arrest charges, the crimes alleged in the indictment would be proper. (See, e.g., People v Middleton, 54 NY2d 474 [1981]; People v Chapman, 13 NY2d 97, supra.) However, the defendant claims that her case is distinguishable because she was not "on-duty” and did not effect the arrest of the complainant; therefore, she stands in the shoes of a civilian complainant, and as such, she may, under the authority of People v Harper (75 NY2d 313, supra), offer to drop the criminal charges in exchange for abandoning any legal claim she might have had against Leon, without incurring any criminal liability.
People v Harper (75 NY2d 313, supra) is distinguishable from the defendant’s case in several ways. The defendant in Harper was charged with bribe receiving by a witness, not bribe receiving in the third degree, as is defendant Gray; the former requires evidence that the defendant promised either to change his testimony or absent himself from the proceedings, while the latter requires evidence of an agreement that the benefit conferred will affect the public servant’s vote, opinion, judgment, action, decision, or exercise of discretion. In Harper, the Court of Appeals held that a civilian complainant’s agreement to drop assault charges, by itself, was not sufficient to sustain a charge of bribe receiving by a witness because there was no evidence that the defendant, agreed to perjure himself or absent himself from proceedings. (People v Harper, 75 NY2d, at 318.) Because the allegations in Gray’s case pertain to official corruption, Harper is not dispositive.
There is no intimation in the Harper decision (supra) that the assault complaint was false or that the testimony that the witness would have given at trial would have been anything other than truthful, whereas the complainant in the instant case testified that Gray falsified the complaint, and one might reasonably infer that since Gray allegedly lied when she filed the false complaint, she would be willing to alter her testimony or absent herself from the proceedings, if necessary, in exchange for the solicited bribe. In addition, the Court in *21 Harper noted that "[a]t worst, [the agreement to drop assault charges in exchange for a cash settlement of all civil and criminal claims] suggests a fundamental misunderstanding by one or both of the parties of the power that private citizen-complainants have over the conduct of criminal proceedings.” (People v Harper, supra, at 318.) By contrast, as a police officer, defendant Gray was not acting under such a misapprehension, but was, no doubt, cognizant of the special relationship between the District Attorney’s office and the Police Department, a relationship that would give her exceptional influence in determining whether the charges would go forward or be dismissed.
Assuming the allegations of the People to be true, Gray’s conduct was not only different from Harper’s in a legally significant way, but had a far more sinister purpose.
In the eyes of the court, the qualification urged by the defendant — on-duty versus off-duty — is a distinction without a difference.[4] Upon taking employment, a police officer takes the following oath: " 'I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and that I will faithfully discharge the duties of the office of [police officer], according to the best of my ability’ ”. (NY Const, art XIII, § 1.) "Implicit in this oath is a vow to faithfully uphold the laws of this State.” (Matter of Sharkey v Police Dept., 179 AD2d 655, 658 [2d Dept 1992] [Miller, J., dissenting].)[5] An officer does not forsake this oath when he or she takes off the uniform. "[W]hile technically *22 'off-duty’, in a sense, a police officer is on duty 24-hours a day. Off-duty police officers carry revolvers and are expected to and do respond to emergencies occurring in their presence whether on or off-duty.” (Supra, at 659; see also, Matter of Pollett v McGourty, 111 AD2d 1023 [3d Dept 1985] [in an article 78 proceeding, reversing disciplinary sanction on other grounds, Court found that Civil Service Law § 75 does not preclude imposition of discipline on civil servant who is guilty of misconduct during off-duty hours].)
The Court of Appeals has recognized the breadth of police officers’ responsibilities, remarking that: "Duties and functions of police officers have never been limited rigidly to the field of law enforcement, in which police officers exercise special powers and enjoy special immunities. Police officers are the guardians of the public peace, but the public is accustomed to look upon them also as the guardians of the comfort, safety and good order of the locality against dangers arising from other causes than offenses against the peace and dignity of the State. No line of demarcation can be drawn definitely. Generally, if not universally, police officers of cities and villages are called upon to perform varied service for the comfort and safety of the public, ranging from assisting old ladies across a highway to the killing of mad dogs or rescuing the drowning.” (People v Lafaro, 250 NY 336, 343 [1929].)
In defendant Gray’s case, she is alleged to have identified herself to her brother officers and instructed them to arrest Daniel Leon. Thereafter, she solicited money from him in exchange for rescinding her false criminal complaint. One may reasonably infer that Leon logically assumed that, as a police officer who had the power to direct his arrest, the defendant had the power to drop the charges. As a police officer, the defendant had an obligation not to file a false complaint against Leon, and having filed the complaint, had a duty to rescind the charges without soliciting or accepting any benefit. In the court’s opinion, in filing the false complaint and soliciting a bribe in exchange for rescinding the charges, the defendant was acting, albeit unlawfully, within her colorable authority as a police officer. That her acts may have been unlawful does not affect the conclusion. (See, People v Charles, 61 NY2d 321 [1984] [court clerk’s promise to "fix” traffic ticket in exchange for $100, notwithstanding his lack of authority to dismiss the ticket, constituted crime of bribe receiving where defendant *23 was acting with colorable authority]; compare, People v Rossi, 50 NY2d 813 [1980] [correction officer was not acting with color-able authority in accepting money in exchange for "fixing” parking tickets, since defendant’s duties were in no way related, even colorably, to the act requested].)
Although the court has not found any precedent directly on point, guidance on this issue may be found in People v Lafaro (250 NY 336, supra). In Lafaro, the defendant was charged with bribing a public official under the former Penal Law for giving a sum of money to a village police officer in exchange for the officer’s permitting him to sell liquor in violation of the National Prohibition Act. The defendant argued that he could not be found guilty of the crime because the officer had no jurisdiction to prosecute a violation of a Federal statute, and therefore, the alleged bribe was not made with the intent to influence the officer with respect to any of his official actions. Indeed, like defendant Gray, the defendant in Lafaro claimed that the officer had no more authority in the matter than a private citizen. (Supra.)
The Court, rejecting this argument, held that the "purpose and the natural effect of the act [solicited by the defendant] is to corrupt the police of the State”, and that "a decision to institute proceedings in the Federal courts to end an act which disturbs the peace and order of the community cannot be said to be wholly outside of the functions of the police officer”, notwithstanding the fact that the sale of liquor was not prohibited by State law. (People v Lafaro, supra, at 344.)
So, too, in defendant Gray’s case, her actions of summoning her fellow officers; informing them of the fact that she is a police officer; directing them to arrest the defendant; then attempting to use her position as a police officer and her attendant special relationship with the District Attorney’s office to effect dismissal of the false charge, cannot be said to be wholly outside the functions of a police officer. As the Court of Appeals stated in Lafaro, "Juridical concepts may not blind us to actual conditions.” (People v Lafaro, supra, at 341.) The court finds no reasons to accept the "on-duty/off-duty” distinction urged by the defense, "where the purpose and the natural effect of the act is to corrupt the police of the State.” (Supra, at 344.) Moreover, contrary to the defendant’s assertion that the court’s holding would mean that "any criminal conduct” by an off-duty officer would subject him or her to charges involving official corruption (see, defendant’s rebuttal to People’s opposition to motion, at 3), it should be apparent that the court’s de *24 cisión is limited to acts relating to the officer’s official functions, and that in this case, it is the relationship of the mechanism of initiating an arrest and criminal charges to the officer’s position as a public servant that makes all the difference.
In sum, the court’s interpretation of the scope of an officer’s official functions not only comports with a fair reading of the contested statutes, but promotes justice and effects the objects of the law. (See, Penal Law § 5.00.) Arrest — denying a person his or her liberty — is one of the most serious intrusions that the State can make upon its citizens. The power of a police officer is near its zenith when exercising authority over a person’s liberty; only when an officer uses deadly force do his or her powers exceed that of arrest. It is essential to ensure public confidence that the police will exercise this weighty authority fairly and justly, and that criminal abuses of that authority will not be tolerated by the justice system.
Therefore, and for the foregoing reasons, the motion to dismiss the indictment is denied. However, counts one and two, charging coercion in the first degree and grand larceny in the second degree, respectively, shall be reduced to attempted coercion in the first degree and attempted grand larceny in the second degree. Counts one and two require evidence that the defendants "instilled fear” in the complainant. (See, Penal Law §§ 135.65, 155.40.) However, by the time the transaction took place, the complainant had already contacted and was working with the Internal Affairs Bureau, and therefore, his fear arising out of the defendants’ actions had abated.

. The counts of official misconduct pertain to defendant Gray, alone.

. In their affirmation in opposition to the defendant’s motion to dismiss the indictment, the People claim that "the defendant dialed 911 and called a code '1013’, an emergency distress call for police officers. It is the most serious call in the lexicon of police emergency calls.” (People’s affirmation and response in opposition, at 3.) The People claim that this code "got the defendant a response by other police officers, while she was off-duty, not available to the average citizen.” (Ibid.) However, there was no evidence before the *16 Grand Jury that the defendant uttered this code when she summoned the police.

. In their affirmation in opposition to the defendant’s motion to dismiss the indictment, the People claim that the uniformed officers arrested Daniel Leon for assault despite the fact that Gray refused medical attention. There was no evidence before the Grand Jury that Gray refused medical attention. In a supplemental affirmation and memorandum dated February 28, 1997, the defendant submitted a copy of an Early Case Assessment Bureau Data Sheet, prepared by the District Attorney’s office, which indicates that Gray was treated for "poss. fractured hand”. (See, defendant’s rebuttal, exhibit C.)

. The defendant’s claim rings especially hollow in view of information contained in an on-line booking sheet prepared by the arresting officer in the case against Daniel Leon, the complainant in the instant case. The defendant appended this document to her rebuttal to the People’s opposition to the motion as support for her argument that the incident was in no way related to her position as a police officer, since the sheet listed her home address, not her precinct, arid did not mention that she was a police officer. The court notes however, with great interest, that the document indicates that the one of the arrest charges lodged against Daniel Leon was Penal Law § 120.05 (3), alleging assault upon a police officer with intent to prevent her from performing a lawful duty. Of course, because the document was not in evidence before the Grand Jury, the court may not consider it in determining the legal sufficiency of the evidence.

. In a CPLR article 78 proceeding, Justice Miller dissented from the majority opinion reversing the police department’s determination that an allegedly intoxicated off-duty police officer’s involvement in an automobile accident was so intimately related to his official duties as to constitute a per se violation of his oath of office, requiring termination. The case was remitted for a hearing on that issue. Justice Miller concluded that, "there are no circumstances so exigent or mitigating to justify drunk driving by one whose *22 very oath of office requires him to uphold the law.” (Matter of Sharkey v Police Dept., 179 AD2d 655, 659, supra.)