■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES JAMES BRIGGINS, Appellant.—Appeal by defendant from a judgment of the County Court, Suffolk County, rendered February 2, 1977, convicting him of two counts of criminal possession of a forged instrument in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. This case is remitted to the County Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5). In view of the dissenting memorandum of Mr. Justice Titone, we address ourselves briefly to defendant's contention that the Suffolk County jury selection procedure deprived him of a fair trial. Defendant's argument rests, in essence, on two facts which were brought out at a pretrial hearing on his motion to disqualify the jury panel. First, the jury panel in this case was composed entirely of white persons. Second, the Suffolk County Commissioner of Jurors admittedly follows the practice of excluding from juries those persons who do not possess a driver's license. We do not believe that either of these facts warrants the conclusion that the Suffolk County jury selection procedure is unlawfully discriminatory. The Sixth and Fourteenth Amendments to the Federal Constitution require "the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn" *(Taylor v Louisiana,* 419 US 522, 526). The "fair-cross-section" requirement precludes the exclusion of

"large, distinctive groups * * * from the pool" (p 530). Over the years, the courts have ruled unconstitutional the systematic exclusion of Blacks *(Strauder v West Virginia,* 100 US 303), women *(Ballard v United States,* 329 US 187; *Taylor v Louisiana, supra),* Mexican-Americans *(Hernandez v Texas,* 347 US 475) and day laborers *(Thiel v Southern Pacific Co.;* 328 US 217) from jury service. Not all exclusions, however, are impermissible. As stated in *Taylor v Louisiana (supra,* p 538), "The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community." Applying the *Taylor* standards to the facts appearing on the instant record, we cannot say that the Suffolk County jury selection procedures are unconstitutional. There was no showing that the category of persons excluded because they did not possess a driver's license was numerically large, or constituted a "separate class" (see *Hernandez v Texas, supra,* p 479) or "identifiable group entitled to a group-based protection" (see *Hamling v United States,* 418 US 87, 137). Nor was it shown that the exclusion of nondrivers disproportionately affected Blacks, or members of a particular class. The fact that the panel from which defendant's jury was chosen was entirely white is inconclusive. There was no proof of the proportion of Blacks in the total population of Suffolk County, or of Black representation on previous jury panels. Certainly, it was not demonstrated that Blacks have been underrepresented on Suffolk County juries "over a significant period of time" (see *Castaneda v Partida,* 430 US 482, 494). Damiani, J. P., Rabin and Margett, JJ., concur.

Titone, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: Prior to the selection of the jury, the trial court conducted a hearing on defendant's motion to disqualify the jury panel on the ground, *inter alia,* that the jury selection process in Suffolk County systematically excludes a large number of citizens of the county who are Black or young persons from serving as jurors. Defendant, who is Black, noted for the record that the panel from which his jury was selected numbered anywhere from 55 to 75 persons, not one of whom was Black. After the hearing, which consisted solely of testimony given by Gregory D'Ambro, Chief Deputy Commissioner of Jurors in Suffolk County, the court denied the motion. Although I do not believe defense counsel adequately developed his point, nevertheless certain testimony elicited from D'Ambro, is frankly disturbing. According to D'Ambro, who at the time had been Deputy Commissioner of Jurors for 15 years, it had been the practice of his office not to select persons for the Suffolk County jury lists who did not have a license to operate a motor vehicle. This policy was followed because Suffolk County, unlike other counties, had no general transportation. D'Ambro noted that the Town of Babylon is 43 miles from the county seat at Riverhead and that the preponderance of the Black population of Suffolk County was in that town. In my opinion, such evidence demonstrates that during the decade and a half leading up to defendant's trial, juries selected in criminal cases in Suffolk County did not reasonably reflect a cross section of the population suitable in character and intelligence for that civic duty (see *Taylor v Louisiana,* 419 US 522, 528). The deliberate exclusion of a particular community group or class of persons from jury service violates the constitutional right to a jury trial *(Taylor v Louisiana, supra,* p 530). In *Thiel v Southern Pacific Co.* (328 US 217, 219), the plaintiff, in a passenger's action against defendant railroad for personal injuries, moved to strike the entire jury panel, alleging, *inter alia,* that " 'mostly business executives or those having the employer's viewpoint are purposely selected on said

panel' ". Such policy, asserted the plaintiff, gave majority representation to one class or occupation and discriminated against other occupations and classes, particularly employees and those in the poorer classes who constitute the great majority of citizens eligible for jury service. At the hearing on the motion, the clerk of the court testified that his office used the city directory as a source of names, and deliberately and intentionally excluded from the jury lists all persons who worked for a daily wage. The jury commissioner corroborated the clerk's testimony by stating (p 222) that where he thought designations in the directory, such as longshoremen, bricklayers, carpenters, etc., indicated that such persons were day laborers, he purposely excluded them because in the past invariably they would come into court, offer financial hardship as an excuse, and " 'the judge usually let them go.' " In reversing, by a vote of 6 to 2, the judgment based on a jury verdict for the defendant, although there were at least five laborers on the jury, the United States Supreme Court made the following pertinent remarks (pp 222-224): "This exclusion of all those who earn a daily wage cannot be justified by federal or state law * * * Jury competence is not limited to those who earn their livelihood on other than a daily basis * * * Wage earners, including those who are paid by the day, constitute a very substantial portion of the community, a portion that cannot be intentionally and systematically excluded in whole or in part without doing violences to the democratic nature of the jury system. Were we to sanction an exclusion of this nature we would encourage whatever desires those responsible for the selection of jury panels may have to discriminate against persons of low economic and social status. We would breathe life into any latent tendencies to establish the jury as the instrument of the economically and socially privileged. That we refuse to do. * * * Jury service is a duty as well as a privilege of citizenship; it is a duty that cannot be shirked on a plea of inconvenience or decreased earning power. Only when the financial embarrassment is such as to impose a real burden and hardship does a valid excuse of this nature appear. Thus a blanket exclusion of all daily wage earners, however well-intentioned and however justified by prior actions of trial judges, must be counted among those tendencies which undermine and weaken the institution of jury trial." In determining that the facts adduced at the *Taylor* hearing as to the exclusion of persons without a driver's license do not warrant a conclusion that the jury selection process was unlawfully discriminatory, the majority states, *inter alia,* that not all exclusions are impermissible and that the States, under *Taylor,* remain free to prescribe relevant qualifications for their jurors and reasonable exemptions. However, nowhere in its memorandum does the majority even attempt to justify the subject exclusion. Furthermore, with respect to the "relevant" qualifications needed for jury duty in Suffolk County, the applicable statute in effect at the time this case was tried contained no language requiring a prospective juror to have a driver's license as a condition of service (Judiciary Law, former § 662 entitled "Qualifications of jurors"). Similarly, the failure to possess such an instrument was neither grounds for disqualification of a person from jury duty nor a basis for the claiming of an exemption under the law at the time this case was tried (Judiciary Law, former §§ 664, 665 entitled "Disqualifications" and "Exemptions", respectively). In my opinion had any statute been enacted either requiring a person to possess a driver's license in order to qualify for jury duty, or disqualifying or allowing one an exemption from so serving, I strongly doubt it would have survived any judicial test of "relevancy" or "reasonableness". Contrary to the view expressed by the majority that the category of persons

excluded herein did not constitute a "separate class", it is manifest that for over a decade and a half, a substantial number or group of Suffolk County residents, namely those who did not have a license to operate a motor vehicle, have been prevented from serving on juries because those charged with the responsibility of jury selection decided their problem of transportation to trial courts was insoluble. In my opinion such massive exclusion cannot be justified either by Federal or State law. One without a driver's license may be as fully competent as one who is licensed to operate an automobile, truck, locomotive or airplane. Moreover, although defense counsel did not adduce evidence at the hearing linking the failure to possess a driver's license with lower socioeconomic classes, I believe it could logically be inferred that a substantial number of those adults who do not have a driver's license are concentrated at the lower end of the economic scale. Once a defendant has shown substantial underrepresentation of a sizeable group on juries over a significant period of time, he has made out a prima facie case of discriminatory purpose, thereby requiring the People to rebut that case (cf. *Castaneda v Partida,* 430 US 482). It should also be observed that one of the reasons D'Ambro gave for not qualifying persons for jury duty who did not have a driver's license, was that by law such a person was only allowed a transportation fee to the court of 8 cents a mile. Such is not true today. On June 21, 1977, less than eight months after the jury verdict in this case, a new law governing jury selection and qualification was enacted by the State Legislature (L 1977, ch 316, § 2, eff Jan. 1, 1978). Section 521 of the Judiciary Law now provides, *inter alia,* that trial jurors in the unified court system shall be entitled to per diem allowances and travel expenses and that the State administrator may establish a uniform mileage fee for the distance necessarily traveled to and from a juror's residence by the shortest practicable route in going to or returning from the place of service. Such fees and expenses also include expenses actually and necessarily incurred in providing food and lodging for jurors. This new law, by having the State assume the cost of juror transportation, should produce more representative juries. I also wish to comment upon an item of recent interest which I believe has some relevancy to this case. In November of 1978, the Suffolk County Legislature voted to spend an estimated $600,000 for renovation of airport runways, so that an air cargo company might fly pregnant cattle out of the Westhampton airport to Iran and other Middle Eastern countries. A representative of the air cargo company was quoted as saying that the project would create local jobs and bring the county $800,000 in revenue over five years. He also allegedly said that pregnant cows were flown out because it was a convenient way to ship two cows and because the company was paid for two cows if one was pregnant. In mentioning the above matter, I emphasize that I am not being critical of the Suffolk County Legislature's efforts to improve both its economy and bovine air flight. I do contend, however, that sufficient care, attention and funds should also be provided by the responsible State agency for those persons who are eligible for jury duty but cannot drive to the court because they do not have either a license to drive or the means to own and maintain an automobile, or both. The affirmative constitutional duty of the State to provide a jury made up of a cross-section of the community should not be diluted or compromised by restrictive and inadequate budgetary allocations.