■ In the Matter of CHARLES BRIGGINS, Respondent, v ROBERT McGUIRE, as Police Commissioner of the Police Department of the City of New York, et al., Appellants.—Order of Supreme Court, New York County (Richard Lee Price, J.), dated December 12, 1983 (no evidence of entry; leave to appeal granted by Price, J., in an order entered Apr. 17, 1984), granting the petition to the extent of remanding this matter to respondents for a departmental hearing on the question of reinstatement, unanimously reversed on the law, the petitioner's motion to restore this proceeding to the calendar for a determination on the merits is denied, and the petition is dismissed, without costs.

Petitioner joined the New York City Police Department in September 1966, and was later promoted to the rank of detective. In order to conceal additional earnings from outside employment, petitioner adopted a pseudonym under which he opened an independent bank account. He also obtained a temporary driver's permit and applied for a permanent driver's license under this false identity. In March 1975 this scheme came unraveled when a salesclerk at a Suffolk County store where petitioner was shopping queried petitioner on his identity for reasons unrelated hereto. Evidently concerned that his use of the pseudonym would be discovered, petitioner struggled with the security guard called to the scene, who happened to be an off-duty Suffolk County police officer. This scuffle resulted in petitioner's arrest, and the revelation of his true identity. A 13-count indictment charged petitioner with various counts of assault, forgery of checks signed in his

pseudonym, larceny of the purchased merchandise, possession of several checks drawn to the order of the pseudonym, and two counts of criminal possession of a forged instrument in the second degree (the driver's permit and application for permanent license), a class D felony. The trial court dismissed the check forgery counts and the jury acquitted petitioner of all other charges except for the two counts relating to possession of the allegedly forged driver's permit and application for permanent license. He was sentenced to 60 days on each count. After affirmance by a divided court (*People v Briggins,* 67 AD2d 1004), the conviction was ultimately reversed and the indictment dismissed in May 1980 (50 NY2d 302), the Court of Appeals ruling that the elements of criminal possession of a forged instrument were not present, petitioner having signed his own pseudonym to these documents.

Petitioner thereafter applied for reinstatement to full duty with the New York City Police Department, or at least an opportunity to clear his name. When respondent denied this application, petitioner brought the instant CPLR article 78 proceeding, seeking reinstatement or at the very least a hearing on the question. Respondents' appeal is solely from an interim order granting petitioner a departmental hearing on the issue.

Public Officers Law § 30 (1) (e) provides that a public office shall be considered "vacant" upon the officeholder's "conviction of a felony, or a crime involving a violation of his oath of office". The language of this statute has remained virtually unchanged since enactment of the Public Officers Law nearly a century ago (L 1892, ch 681, § 20). Viewing the purpose of the statute as removal of a convicted felon from a position of public honor, rather than actual punishment for his offense, the Court of Appeals ruled more than 60 years ago that "[t]he application of the statute is not defeated by the possibility that the judgment may be reversed." (*Matter of Obergfell,* 239 NY 48, 50.)

The Court of Appeals has more recently had occasion to reexamine this question in *Matter of Toro v Malcolm* (44 NY2d 146, *cert denied* 439 US 837). There a correction officer's felony conviction was reversed on appeal and he was voluntarily reinstated to his office. The officer's petition for back pay was rejected by the Court of Appeals, which ruled that the Legislature had declared such offices to be vacant upon conviction of a felony, notwithstanding "the possibility that at some future date a former officer's conviction may be reversed" (*supra,* p 150).

That there is a residual sense of harshness and unfairness in a rule that stigmatizes an individual even after his conviction has been overturned cannot be denied. But we are dealing here with two sets of standards, applicable in disparate circumstances, which should not be confused. The first is the high standard that must be satisfied for serving in a position of public trust, symbolized by the oath of office (*see,* NY Const, art XIII, § 1; Public Officers Law § 10).

The second is the unrelated standard of proof necessary to support a criminal conviction (i.e., beyond a reasonable doubt). Evidence in a particular case may be insufficient to prove a criminal allegation, and yet may still be sufficient to call into question a police officer's moral qualifications for continued public service. Continued occupation in a position of public trust may be thwarted by evidence of conduct which might still be insufficient to support a criminal conviction. As the Court of Appeals noted in *Toro* (*supra*), a conviction may have resulted from indisputably conclusive evidence of guilt, with reversal warranted due solely to procedural irregularity. While the courts must be "sympathetic to the plight of a truly innocent officer unjustly accused and convicted", we must still be "opposed to establishing a general rule which would provide unjustified relief to others not equally deserving." (*Matter of Toro v Malcolm, supra,* p 151.) This is not to say that relief would not be available to the unjustly convicted innocent who was completely vindicated on appeal. Nothing prevents a de novo application for appointment, or even reinstatement. But the law prohibits automatic reinstatement in such circumstances. Reversal of a conviction and dismissal of an indictment may remove a disability to hold office, but it does not entitle one to automatic reinstatement (*Sroka v Municipal Civ. Serv. Commn.,* 57 AD2d 1064). Discretion in such matters rightfully resides in the governmental agency in which the officer was employed (*Matter of Toro v Malcolm, supra*). That agency is charged with maintaining a balance between the rights of an officer who may or may not have been falsely accused of impropriety, and the right of the public to be assured that its officers meet high standards of moral integrity. As to the latter, a "felony conviction, notwithstanding its reversal on appeal, may in many cases shatter this ideal." (*Matter of Toro v Malcolm,* 44 NY2d 146, 152, *supra.*)

Petitioner here complains that denial of reinstatement without a hearing deprives him of constitutional due process. We have already held that since a public office is automatically vacated by operation of law upon conviction, there would be

no entitlement to a predischarge hearing (*Matter of Hodgson v McGuire,* 75 AD2d 763). A fortiori, there is no entitlement to a posttermination hearing on an application for reinstatement. The office having been vacated long before the application for reinstatement, all rights to the office disappeared at that time. Denial of a hearing in conjunction with petitioner's application for reinstatement deprived him of neither liberty nor property, thus negating any claims with regard to constitutional due process (*Greene v McGuire,* 683 F2d 32). Concur— Kupferman, J. P., Ross, Asch and Fein, JJ.