OPINION OF THE COURT
Simons, J.
Petitioner, a New York City Police Officer, was found guilty of the misdemeanor of criminal trespass in the second degree after an off-duty scuffle with another man. Following the conviction, respondent Ward, the Police Commissioner, summarily terminated petitioner’s employment pursuant to Public Officers Law § 30 (1) (e). That provision directs that a public office becomes vacant when the incumbent is convicted of a felony or "a crime involving a violation of his oath of *130 office”. By its terms, section 30 (1) (e) applies to any felony conviction (Matter of Graham v Coughlin, 135 AD2d 1014, affd 72 NY2d 1014) but the second clause of the statute, which must be interpreted to decide this appeal, has a less certain meaning. We conclude that in applying the statute to misdemeanor convictions arising outside the line of duty, courts should look not to the facts of the particular case but solely to the elements of the crime. Inasmuch as the elements of criminal trespass in the second degree (Penal Law § 140.15), charged here, cannot be read to constitute a crime involving a violation of petitioner’s oath of office, he should have been afforded a hearing before termination.
I
Evidence introduced at petitioner’s criminal trial established that he was driving on a Queens street when the driver of the vehicle in front of him stopped and left his vehicle unattended while he went to open his garage door. The stopped vehicle temporarily blocked petitioner’s passage, thereby provoking an argument between the two until the driver went into his residence. Petitioner followed him into the vestibule and the disagreement quickly escalated into a scuffle involving petitioner, the driver and other residents. Finally, petitioner drew his service revolver, pointed it at the driver and the others to restrain them and then left to summon police. Much to petitioner’s surprise, when the police arrived and investigated the incident, they arrested him instead of the driver.
In a nonjury trial, petitioner was acquitted of misdemeanor criminal mischief in the fourth degree (Penal Law § 145.00) and misdemeanor menacing (Penal Law § 120.15) but convicted on the criminal trespass count. Following the conviction respondent signed a "Final Order of Dismissal” summarily terminating petitioner’s employment. Petitioner then instituted this CPLR article 78 proceeding seeking reinstatement. Supreme Court concluded that a trespass on private property in the heat of an argument did not violate petitioner’s oath of office for purposes of the statute. A divided Appellate Division reversed, the majority finding that "petitioner entered private premises unlawfully prolonging a dispute when his adversary had retreated, an act clearly violative of his oath to protect property”. (182 AD2d 361, 363.) We now reverse and reinstate the order and judgment of Supreme Court.
*131 II
The predecessor to Public Officers Law § 30 (1) (e) was enacted more than a century ago (L 1892, ch 681, §20). The statute remains substantially unchanged today. Its directive is "clear and unqualified”: every public office automatically becomes vacant upon a conviction falling within its purview (Matter of Toro v Malcolm, 44 NY2d 146, 149-150; see, Matter of Obergfell, 239 NY 48, 50, rearg denied 239 NY 589; Matter of Breslin v Leary, 35 AD2d 794, 795). Summary termination is not a punishment for the officeholder’s crime, and reversal of the conviction on appeal does not automatically entitle the officeholder to return to the vacated position (see, Public Officers Law § 30 [1] [e] [procedures for seeking reinstatement following reversal or vacation of conviction]; Matter of Hays v Ward, 179 AD2d 427, 428, lv denied 80 NY2d 754; see also, Matter of Toro v Malcolm, supra; Matter of Briggins v McGuire, 67 NY2d 965, cert denied sub nom. Briggins v Police Dept., 479 US 930). Rather, the statute’s requirement that the office be vacated on conviction reflects two legislative concerns. First, as a practical matter, governmental work should not go unattended, or a position unfilled, while a convicted officeholder pursues a potentially lengthy appeal (Matter of Toro v Malcolm, supra, at 150; Matter of Briggins v McGuire, supra, at 967). Second, and more fundamentally, the public has a "right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust” (Matter of Toro v Malcolm, supra, at 152). Although the result of implementing the statute is sometimes harsh, it is clear that "the balance must be struck in favor of the public” when the officer’s interest is weighed against that of State’s citizens (id., at 151-152; see also, Matter of Briggins v McGuire, supra).
III
When an officeholder’s termination is premised on a "crime involving a violation of [the] oath of office”, two questions are raised. First, should a court, before sustaining a vacatur, look solely to the elements of the crime as set forth in the Penal Law or may it permissibly review the underlying facts of the particular incident leading to the criminal charge (compare, De Paulo v City of Albany, 49 NY2d 994 [statutory definition of offense was not related to officer’s oath]; and Matter of Sharkey v Police Dept., 179 AD2d 655, 657 ["Resort to the *132 record is necessary in order to ascertain whether the officer violated his oath of office”])? Second, what type of misdemeanor comes within the terms of the statute?
The courts have disagreed on how to articulate the appropriate test — and even whether such a test can be articulated— for determining the scope of the section. In the present proceeding Supreme Court declared that the statute reaches only crimes indicative of a "lack of moral integrity” (143 Misc 2d 851, 852-853). The Appellate Division expressly rejected that standard as too narrow (182 AD2d 361, 363). By contrast, the Second Department has proposed that a per se violation of an officer’s oath occurs only when the underlying conduct is "intimately related to official duties” (Matter of Sharkey v Police Dept., 179 AD2d 655, 656 supra). Respondent offers still another view: that the Legislature, by choosing not to state a more exact standard in the statute, intended that each conviction be evaluated on its facts in light of the particular oath taken. Because the oath prescribed by the State Constitution requires each public officer to swear to "faithfully discharge the duties of the office” (NY Const, art XIII, § 1), the test for a section 30 (1) (e) offense would necessarily vary, under respondent’s theory, depending upon the precise duties of the particular office.
Despite the lack of agreement on the appropriate standard, the courts have most often sustained summary dismissal. Officers have been dismissed, for example, following convictions for perjury (Lemieux v City of Niagara Falls, 138 AD2d 945, lv denied 72 NY2d 806), conspiracy to bribe (Sroka v Municipal Civ. Serv. Comma., 57 AD2d 1064), reckless endangerment (Matter of DeCaro v Ward, Sup Ct, NY County, Index No. 19130/85, affd without opn 134 AD2d 967) and assault (Matter of Farnworth v Ward, Sup Ct, NY County, Index No. 20131/86, affd without opn 141 AD2d 1011, lv denied 72 NY2d 810). In only one case cited was the officer’s petition granted. In that case, Matter of Sharkey v Police Dept. (179 AD2d 655, supra), the Second Department held that an officer’s conviction for driving while intoxicated following a fatal automobile crash was not sufficient to trigger summary termination; a civil service hearing was needed to develop fully the facts of the incident to determine whether dismissal was warranted. Petitioner also relies on our decision in Matter of De Paulo v City of Albany (49 NY2d 994, 996, supra), in which three Judges of a six-Judge Court stated in dicta that the violation *133 of the oath must be found in the definition of the offense.* The remaining three Judges, although concurring in result, took issue with the definitional approach and argued that the underlying facts should be analyzed: "Obviously in such a case it should be the conduct, not the label placed upon it, which determines the sanction” (id., at 997 [Wachtler, J., concurring]).
Analysis starts by recognizing that the alternatives are not either summary dismissal or continued employment as a police officer. Dismissal may still occur after a hearing. The practical effect of granting petitioner a hearing will be to ensure that he is afforded an opportunity to present his version of the incident before a determination is made on whether dismissal is warranted (see, Civil Service Law § 75).
Understanding that over-all statutory scheme is critical to understanding the purposes of Public Officers Law § 30 (1) (e). In making convictions upon certain crimes grounds for immediate dismissal, the Legislature implicitly acknowledged that no factual showing by the officeholder was needed, for under no circumstances could facts unique to the incident mitigate the violation of the public trust confirmed by, and arising from, the criminal conviction. Thus, all felony convictions, whether on duty or off duty, whether crimes of violence or crimes of deception, trigger automatic dismissal. It follows that the second category of offense in section 30 (1) (e), "a crime involving a violation of [the] oath of office”, should likewise be interpreted in such a way that no factual inquiry is needed to trigger automatic dismissal.
To construe the law as giving the Commissioner unbridled discretion to make a fact-based determination about dismissal but foreclosing the opportunity to develop the facts, would risk the potential for arbitrary government action. To be sure a public officer has the opportunity to make a factual record in the criminal proceeding, but because of defense strategy, plea bargaining, or other reason unrelated to fitness for office, may not do so. The employee should not be placed in the position of choosing between a criminal defense strategy and the need to preserve public office. If the facts of the conduct underlying conviction are to be relevant to dismissal, they *134 should be developed in an appropriate civil forum, not taken from the unexplained conduct charged in the accusatory instrument as the dissent maintains (dissenting opn, at 136).
Accordingly, a misdemeanor conviction for conduct outside the line of duty will be "a crime involving a violation of [the] oath of office” under Public Officers Law § 30 (1) (e) only if the violation is apparent from the Penal Law’s definition of the crime.
IV
The remaining question is what crimes fall within section 30 (1) (e)’s purview. Petitioner, like all New York City Police Officers, took the oath prescribed by the State Constitution (art XIII, § 1) to "support the constitution of the United States, and the constitution of the State of New York,” and to "faithfully discharge the duties of the office of’ police officer. Implicit in that oath is a vow to uphold the laws of New York. Thus, it might well be thought that any criminal conduct, undertaken knowingly, would violate the oath. That construction of the statute could not have been intended by the Legislature, however, for it would effectively read out of the statute the limiting language of the phrase, "a crime involving a violation of his oath of office” (emphasis added). Instead, meaning must be found in the underlying rationale for the statute.
The statute’s purpose is to assure citizens that their public officers are individuals of "moral integrity” worthy of confidence and trust (Matter of Toro v Malcolm, 44 NY2d 146, 152, supra). While the oath itself does not expressly establish a duty to act with moral integrity, the very act of taking the oath is rendered meaningless if the officer lacks the capacity to swear honestly or has no serious intention of abiding by its promises. When an officer’s moral integrity is called into question, so is the oath, and the public’s trust in its government is necessarily undermined — the very concern Public Officers Law § 30 (1) (e) was meant to address (see, Sroka v Municipal Civ. Serv. Commn. 57 AD2d 1064, supra; see also, Matter of Pesale v Beekman, 81 AD2d 590; Lemieux v City of Niagara Falls, 138 AD2d 945, supra; cf., Matter of Sharkey v Police Dept., 179 AD2d 655, supra). Thus, reading Public Officers Law § 30 (1) (e) as reaching only those misdemeanors that demonstrate a lack of moral integrity construes the provision in a manner consistent with the statute’s underlying *135 purposes and, at the same time, gives practical effect to the Legislature’s manifest intention to draw some limits on the invocation of summary dismissal.
Accordingly, we hold that for misdemeanor convictions arising outside the line of duty, Public Officers Law § 30 (1) (e) applies to crimes that, as defined in the Penal Law, arise from knowing or intentional conduct indicative of a lack of moral integrity. We have not had occasion to define what specific offenses constitute crimes implicating "moral integrity”, and it may be impossible to demarcate the precise boundaries of the term, but we note that "integrity” has been defined as "freedom from every biasing or corrupt influence or motive” (46 CIS 1100). As Chief Judge Cardozo said of the term "dishonesty”, the critical consideration is "an infirmity of purpose” (World Exch. Bank v Commercial Cas. Ins. Co., 255 NY 1, 5). For a crime to be one demonstrating a lack of moral integrity, it must be one involving willful deceit or a calculated disregard for honest dealings. More than intent or a criminal mens rea is needed for summary dismissal; there must be an intentional dishonesty or corruption of purpose inherent in the act prohibited by the Penal Law.
V
It remains only to apply our holdings to the matter before us. Upon doing so it becomes apparent that the petition to set aside the termination must be granted. Criminal trespass in the second degree occurs when a person "knowingly enters or remains unlawfully in a dwelling” (Penal Law § 140.15). In contrast to misdemeanors such as perjury (see, Penal Law §§ 210.00, 210.05) or bribery (see, e.g., Penal Law § 180.00), for example, a lack of moral integrity is not implicit in the elements of criminal trespass. A conviction for the offense may arise during the heat of argument, as Supreme Court found here, or as a result of an unreasonable belief that one had license to enter or remain (cf., People v Basch, 36 NY2d 154, 159). In neither circumstance would moral integrity of the actor necessarily be called into question. Thus, we conclude that criminal trespass is not the sort of misdemeanor that can be construed facially as a crime "involving a violation of [the] oath” for purposes of Public Officers Law § 30 (1) (e), and summary dismissal was not warranted. The facts assumed by respondent in terminating petitioner and by the dissent are serious indeed, but petitioner seeks to explain and *136 controvert those facts. A hearing is required so that the extent and nature of his misconduct can be resolved before he is disciplined (see, Civil Service Law § 75; McKinney’s Uncons Laws of NY § 891 [L 1940, ch 834]).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court, New York County, reinstated.

 Because the Court concluded that Public Officers Law § 30 (1) (e) reached only "crimes” and not "violations” like disorderly conduct (the sole offense for which petitioner was convicted), the definitional analysis was not needed to dispose of the appeal.