Christine A. Alexander, Esq. Formal Opinion Managing Senior Associate Counsel No. 97-F7 State University of New York State University Plaza Albany, N Y 12246
Dear Ms. Alexander:
On behalf of the Chairman and Vice-Chairman of the State University Board of Trustees, you have requested a formal opinion as to whether the entry of a plea of guilty to attempted grand larceny in the fourth degree by a trustee of the State University of New York results in an automatic vacancy in the trustee's office under section 30 of the Public Officers Law or any other applicable law. In a news release you provided with your request, the Manhattan District Attorney announced that the trustee was charged with stealing more than $13,000 from the account of an employee of the New York City Off-Track Betting Corporation (OTB) who had become seriously ill and had entrusted her financial affairs to the trustee, who at the time also served as president of the OTB.
The trustee pleaded guilty to attempted grand larceny in the fourth degree. Grand larceny in the fourth degree is a class E felony. Penal Law § 155.30. Attempted grand larceny in the fourth degree is a class A misdemeanor. Id., § 110.05(7). Under the Penal Law, a person is guilty of attempted grand larceny in the fourth degree, when with intent to commit a crime, he or she engages in conduct which tends to effect the stealing of property when "[t]he value of the property exceeds one thousand dollars". Id., §§ 110.00, 155.30(1).
It is clear that the position of member of the Board of Trustees of the State University of New York (SUNY) is a public office. The duties of a public officer involve some exercise of sovereign power, while those of a public employee do not. Matter of Dawson v. Knox, 231 App. Div. 490, 492
(3d Dept 1931), affd, 267 N.Y. 565 (1935); Matter of Haller v. Carlson,42 A.D.2d 829 (4th Dept 1973). The statutory designation of a position as an "office" is some indication that the legislative body intended to treat its occupant as a public officer. Cf. Matter of McDonald v. Orday,219 N.Y. 328, 332 (1916); Haller v. Carlson, 42 A.D.2d at 830. Other indicia of a public office are the requirement to take an oath of office; appointment for a definite term; and receipt of a commission of office or official seal. Macrum v. Hawkins, 261 N.Y. 193, 200-201
(1933); 1983 Op Atty Gen 16.
One cannot qualify as a public officer without the authority to exercise a portion of the sovereign powers of government. 1983 Op Atty Gen 16;Haller v. Carlson, 42 A.D.2d 829. As compared to an employee who does not discharge independent duties but acts at the direction of others, a public officer is vested with discretion as to how he or she performs his or her duties. 1986 Op Atty Gen (Inf) 96.
There is no doubt that the trustees of the State University exercise sovereign powers of government in, for example, exercising responsibility for central administration, supervision and coordination of State-operated institutions comprising the State University System. Education Law § 355(1)(a). Such trustees therefore are public officers.
Under section 30 of the Public Officers Law:
 1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
a. The death of the incumbent;
. . .
 e. His conviction of a felony, or a crime involving a violation of his oath of office . . . .
The Penal Law defines a crime as a felony or a misdemeanor. Penal Law § 10.00(6). Therefore, under section 30(1)(e) of the Public Officers Law, the conviction of a public officer of a felony or of a misdemeanor involving a violation of the officer's oath of office results in removal of the official from public office. It is settled that under this provision, the office becomes vacant by operation of law immediately upon conviction of the officer of a covered crime without further administrative action. Matter of Briggins v. McGuire, 112 A.D.2d 829 (1st Dept 1985), affd, 67 N.Y.2d 965, cert denied, 479 U.S. 930 (1986). The "conviction" occurs upon a verdict of guilty or the entry of a plea of guilty. Matter of Gunning v. Codd, 49 N.Y.2d 495 (1980); Criminal Procedure Law § 1.20(13). See also, Op Atty Gen (Inf) No. 93-13. The time of conviction is not delayed until sentencing. Gunning, 49 N.Y.2d 495. An appeal of the conviction does not affect the vacancy created by operation of law and reversal of the conviction does not require reinstatement. Id.; Public Officers Law § 30(1)(e).
Since the trustee's conviction (plea of guilty) is for a class A misdemeanor, under section 30(1)(e) she has been removed from her office by operation of law if the misdemeanor involved "a violation of . . . [her] oath of office". The trustee took and filed the following oath of office as a SUNY trustee:
 I do solemnly swear (or affirm) that I will support the constitution of the United States, the constitution of the State of New York, and that I will faithfully discharge the duties of the office of Member of the Board of Trustees of the State University of New York according to the best of my ability.
In Matter of Duffy v. Ward, 81 N.Y.2d 127 (1993), the Court of Appeals concluded that the misdemeanor of criminal trespass did not involve a violation of an officer's oath of office. In so finding, the Court drew two conclusions which, when applied here, establish clearly that the trustee has been removed from office by operation of law.
First, the Court concluded that in applying the statute to misdemeanor convictions arising outside the line of duty, courts should look not to the facts of the particular case but solely to the elements of the crime. Duffy, 81 N.Y.2d at 130. The Court noted that despite a lack of agreement on the appropriate standard, courts have most often sustained summary removal of officers for misdemeanor convictions such as perjury, reckless endangerment and assault. Duffy, 81 N.Y.2d at 132. Analyzing the legislative purpose of section 30(1)(e), the Court of Appeals found that the Legislature implicitly acknowledged that no factual determination was needed because facts unique to the incident could not mitigate the violation of the public trust arising from the criminal conviction.Duffy, 81 N.Y.2d at 133. Therefore, all felony convictions, whether on or off duty, and regardless of the nature of the felony, result in automatic dismissal under the statute. Duffy, 81 N.Y.2d at 133. Similarly, the Court of Appeals found that the second category covered by the statute, misdemeanors involving a violation of the oath, likewise should be interpreted so that no factual inquiry is needed to trigger automatic dismissal. Duffy, 81 N.Y.2d at 133. Further, the consideration of facts in applying the statute would risk arbitrary governmental action and would place the officer in the position of choosing a criminal defense strategy taking into consideration the need to develop a factual record through a criminal trial to preserve his office. Duffy,81 N.Y.2d at 133. For these reasons, the Court of Appeals stated that:
 Accordingly, a misdemeanor conviction for conduct outside the line of duty will be "a crime involving a violation of [the] oath of office" under Public Officers Law § 30(1)(e) only if the violation is apparent from the Penal Law's definition of the crime. Duffy, 81 N.Y.2d at 134.
Second, the Court of Appeals determined the types of crimes falling within section 30(1)(e). The Court reasoned that the Legislature, in putting in limiting language (a crime "involving a violation of his oath of office"), had a particular type of criminal conduct in mind. Duffy,81 N.Y.2d at 134. It found that the statute's purpose is to assure citizens that their public officers are persons of moral integrity worthy of their trust. Duffy, 81 N.Y.2d at 134. The Court of Appeals stated that:
 [F]or misdemeanor convictions arising outside the line of duty, Public Officers Law § 30(1)(e) applies to crimes that, as defined in the Penal Law, arise from knowing or intentional conduct indicative of a lack of moral integrity. Duffy, 81 N Y 2d at 135.
The Court then generally discussed the elements of misdemeanors falling within the statutory standard:
 We have not had occasion to define what specific offenses constitute crimes implicating "moral integrity", and it may be impossible to demarcate the precise boundaries of the term, but we note that "integrity" has been defined as "freedom from every biasing or corrupt influence or motive". . . . As Chief Judge Cardozo said of the term "dishonesty", the critical consideration is "an infirmity of purpose". . . . For a crime to be one demonstrating a lack of moral integrity, it must be one involving willful deceit or a calculated disregard for honest dealings. More than intent or a criminal mens rea is needed for summary dismissal; there must be an intentional dishonesty or corruption of purpose inherent in the act prohibited by the Penal Law. Duffy, 81 N.Y.2d at 135. (Citations omitted, emphasis supplied).
There is no doubt that the trustee has been convicted, as a result of her plea of guilty, of a misdemeanor involving a violation of her oath of office. She was convicted of engaging with criminal intent in conduct tending to effect the stealing of property valued at greater than $1,000. In the words of the Court of Appeals in Duffy, this crime demonstrated a "lack of moral integrity" by involving "willful deceit" and a "calculated disregard for honest dealings". Duffy,81 N.Y.2d at 134-135. The crime involved "an intentional dishonesty or corruption of purpose". Duffy, 81 N.Y.2d at 134-135.
We conclude that the trustee by operation of law vacated her office as a SUNY trustee upon her plea of guilty to the crime of attempted grand larceny in the fourth degree.
Very truly yours,
DENNIS C. VACCO
Attorney General